It's clause number 23-30807, Kenneth Levine v. Tim Hooper. Is the appellant ready to proceed? Yes, Your Honor. You may. Good morning, and may it please the Court. I represent Kenny Levine, an inmate in the Louisiana Department of Corrections, serving a 61-year sentence for manslaughter and second-degree kidnapping. Mr. Levine appears before this Court appealing the denial of his habeas petition below and the denial of his request for an evidentiary hearing. This case presents a clear example of constitutionally deficient representation during plea negotiations that demands relief under Strickland v. Washington and under Lafleur v. Cooper. Trial counsel in this case failed to advise Mr. Levine about an absolute statute of limitations defense to the second-degree kidnapping charge, and then allowed Mr. Levine to plead guilty to that offense without warning him that he was waiving that claim. Mr. Levine is before the Court on a 2254 habeas petition, which means that he must first show that the State Court's denial of his claim was due to an unreasonable application of clearly established Supreme Court precedent. And Mr. Levine easily showed that in this case, because the State Court, only one State Court ever considered the merits of this claim, and in that decision, which is in the record at page 118, the State Court applied the wrong legal standard. Instead of applying the Strickland two-pronged approach of deficient performance of counsel and prejudice to the defendant, the State Court instead just held that Mr. Levine's And that's legal error under Lafleur v. Cooper. The State Court decision that the Supreme Court was reviewing in Lafleur made the same mistake. It also analyzed deficient performance of counsel during plea negotiations by only looking at whether the plea was knowing and voluntary. And the Supreme Court in Lafleur said that that is an unreasonable application of established Supreme Court precedent. So what that means is that Mr. Levine gets through the gatekeeping function of 2254, and that this court and the habeas court below was allowed to reach the merits of the case. So I'll begin with the deficiency prong on the merits. This was a cold case prosecution. In 2013, Mr. Levine was charged with second-degree murder by the State of Louisiana based on a DNA match for a homicide that occurred in 1990. He was charged with second-degree murder, which does not carry a prescriptive period under Louisiana law. So that charge was timely. Then several years later, while he was... Why wasn't he ever tried on that charge? Is that sort of unusual, not to try people for murder for so long? Why was there not a trial, Your Honor? Well, I believe that they were getting close to the trial when the plea negotiations that are at issue at this case happened. It was scheduled. It was scheduled. That's correct. In fact, my understanding is that this plea happened pretty close to trial. Maybe not on the eve of trial, but pretty close to when the trial was going to actually occur. And so pretty close to the second-degree murder trial, this plea deal is struck between Mr. Levine and the State, where they would dismiss the second-degree murder charge, and he would plead guilty to one count of manslaughter and one count of second-degree kidnapping. And so at that time, now we're in 2016, the second-degree kidnapping charge was prescribed on its face. Right? It was brought in 2016 for conduct that occurred in 1990, well beyond Louisiana's six-year prescriptive period for that charge. So the only way the charge could be brought properly is if the State could show under Article 576 of the Louisiana Code of Criminal Procedure that it was a lesser offense based on the same facts. Right? That's the operative language from the statute. And so that's kind of the crux of this case, right? It is the second-degree kidnapping charge, a lesser offense based on the same facts as the second-degree murder charge. And there are several reasons why it's not in this case. There's legal reasons, and there's also factual reasons in the record. And I'll start with the legal reasons. In 1990, second-degree murder did not include second-degree kidnapping as a lesser offense or even as a predicate felony murder listed felony in the statute. Which means that in 1990, the date that this offense occurred, the State could not have charged Mr. Levine with a second-degree murder using second-degree kidnapping as the predicate. They would have had to only charge him with second-degree murder under the specific intent to cause bodily injury or kill section. And that's how they charged him, actually, in this case. And so since the Louisiana legislature in 1990 decided that second-degree kidnapping is not a lesser included of second-degree murder, then it legally cannot be a, to quote Article 576, a lesser offense than the second-degree murder as found by the Louisiana legislature. So legally, the State was precluded from charging second-degree kidnapping as a lesser included. And I think that's dispositive. I think that means that Article 576 doesn't allow them to say that the second-degree kidnapping is a lesser included. That's the legal bar, I think, that prevented them from doing that. But in the record in this case, there are factual reasons that show that they're not based on the same facts as well. And there are three documents in the State court record I want to point to. The indictment of the second-degree murder, the arrest warrant for Mr. Levine, and also the factual basis for the kidnapping plea. And those are really the only three documents in the record that tell us any facts about the offense. And so I'll start with the indictment. The State only charged Mr. Levine originally with second-degree murder. In that indictment, they did not allege that there was a kidnapping. Now they could have alleged aggravated kidnapping under the 1990 law. They didn't allege that, right? They only allege a second-degree murder. When we look at the arrest warrant, which is the most detailed set of facts in the record that explains the entire investigation and the evidence collected, the arrest warrant never says there's a kidnapping. It only says that there was a homicide and an aggravated rape, right? It doesn't allege any sort of forceful removal of a person against their will. And I'll point out that Mr. Levine and the victim were relatives. They knew each other by marriage. And so in the arrest warrant, which is where the government could, I mean, the State could set out all of their facts, they don't ever allege that a kidnapping occurred, right? And that's where they would have alleged the kidnapping if the murder and the kidnapping were based on the same facts. And then perhaps most helpful is the factual basis for the kidnapping plea. And this is in the record at page 410. So here's where the State sets forth the facts that it believes shows that there was a second-degree kidnapping. And the factual basis shows that there were two separate criminal acts. And so there was a kidnapping with a sexual abuse, according to the State, and then there was a separate homicide with an aggravated battery with a knife. And that those are two separate criminal acts. They're not based on the same facts. And what's really important about the factual basis is that the State charged the second-degree kidnapping under the provision of second-degree kidnapping based on sexual abuse, right? That's what they allege. They could have charged the second-degree kidnapping under a different section that alleged physical injury. And so if the kidnapping was based on the same facts as the second-degree murder, that's how it would have been charged, but the State chose not to do that. They charged a separate kidnapping and sexual event, and then a separate homicide with a knife and a battery. And so the fact that these are two separate criminal events, right, that are not based on the same facts, has legal support as well. Under Article 576, there are the official revision comments that explain how that article is supposed to be applied by the courts. And it says, quote, that if the second charge involves additional facts, then it cannot be said to be based on the same facts, and the first charge does not interrupt prescription. So the comments to Article 576 explain that in a case like this, where the kidnapping involves additional facts, the movement of a person, a sexual abuse, facts that you don't have to prove in the second-degree murder, that it can't be said to be based on the same facts. And that finds support in the Louisiana Supreme Court decision in powers, where the Louisiana Supreme Court says that if the two offenses involve different elements that occurred at different times, then they can't be linked together under 576. Quote, even if they occurred within an extended criminal episode. So the Louisiana Supreme Court has weighed in on this as well and said that when you have, you may have one long criminal episode, but when there are separate charges with separate elements that some have additional facts, they can't relate back. And all this is just a long way of saying that Article 576 doesn't save the state here, right? It doesn't make the second-degree kidnapping timely, right? It was prescribed on its face, and the state could not have shown that it was based on, it was a lesser offense based on the same facts under powers, under Article 576, under the comments, and also under their own charging documents. You say that it's prescribed. When the motions were filed and not ruled on, didn't that pause the prescriptive period so that it wasn't the total amount of days that you're claiming? Okay, that's a good question. That's a separate calculation. So the charge was prescribed between the date the crime occurred and the date he was charged. That's the prescription argument that I'm talking about. Your Honor, what you're asking about is kind of like the speedy trial clock that runs from the date that the charge starts until he has to be brought to trial. And you're correct. In Article 576, there are two ways that you can knock out the new charge. One is what I've been talking about so far, is to say that it's not based on the same facts and is a lesser included. There's an alternative way you can knock the charge down, and that's by talking about what Your Honor's talking about, which is to say that the state only brought the new charge to avoid that speedy trial clock that exists in the later provisions, 578, 579, 580, 581. And this Court asked us to brief that issue as an alternative, and we did brief it. And what I'll tell the Court is that the state's response in their brief, I think, shows that that clock had not run, right? It shows that there were enough interruptions in the time that he had been in jail that I can't say that that two-year clock had run. So that alternative way that Mr. Levine could argue that the charge should have been kicked as untimely, I can't make that argument because I think the state has proved that up, right? So there were enough interruptions in that speedy trial clock that the speedy trial clock had not run. But that is a separate question than whether they could have ever brought the second-degree kidnapping charge because they can't bring it if it's not a lesser included based on the same facts. That's a separate question. And I think the record clearly shows that Mr. Levine would have been able to kick the charge in that regard. Did I answer your question, Judge? Okay. And so all this is a long way of saying that Mr. Levine received deficient performance of counsel because under both Louisiana law and federal law, it is deficient performance of counsel to plead your client to a prescribed charge, right? The Louisiana Supreme Court said so in the Knowles decision. If I agree with that premise, that gets you halfway there, right? That's correct. We still got prejudice. Now you got to show prejudice. Right. That's correct. Let's talk about that. Okay. So the record in this case consistently shows that Mr. Levine would have rejected the plea deal if he had received competent counsel. And there's a bunch of things I want to point to. The first way we know that is he tried to withdraw his plea before the sentencing, right? As soon as he realized that he was getting bad counsel and that the things that he was promised weren't happening, he tries to withdraw his guilty plea in the record. And when his lawyer is doing a pretty ineffective job withdrawing the guilty plea, he speaks up and interrupts his lawyer and the judge to say, this is not what I was told. This is not what I was promised. And so he asserts on the front end that he's getting bad counsel and that he wouldn't have pled guilty with good counsel. He tried to withdraw his guilty plea. As soon as he gets to the Louisiana Department of Corrections after the sentencing and he gets access to a law library, he immediately sees that the charge he pled to was prescribed and he files a pro se motion to quash and mails it to the district court from prison. And that motion is denied because it's too late for a motion to quash, of course. But that's further evidence of him saying, I wouldn't have taken, I wouldn't have pled guilty if I'd have known that. Well, you're connecting all of these, but let's, let's go first to what he claimed he was told about what would happen versus what did happen. What's that claim specifically? Okay. So does he say he was promised that he didn't get when, when the sentencing happened? That's correct, Your Honor. And that was a different claim in the habeas petition. But Mr. Levine claims, and his, and his counsel confirmed this to me, and I proffered it in the record below, that he was promised a deal of 21 years, right? He was promised that if he took this plea deal, that he would receive a 21 year sentence on each count concurrent. And under the 1990 laws, he would serve at most 10 and a half years. He'd been in jail several years already. The light was at the end of the tunnel. And that is in the record at, Well, you admit that, but it would have been a different lawyer, right? Right. Well, so that, so, so first it's in the record at page 278 and at page 345. I'm not saying that, but is there anything to support? So that, so that, that's my proffer in the, in the habeas court below about my interview with the state counsel. So I interviewed Susan Jones, the counsel who was there for the guilty plea, the ineffective counsel. And then I represented what she told me and my investigator to the court below in an effort to get the hearing, because I was prepared to call her as a witness to testify to all of these facts. So it's, so it exists in this record as a proffer. There's another issue before the court in this case about that hearing, right? About the need for that hearing, so that way she could testify about those promises. But what she would testify to was that there was that judge LeBlanc, the state court judge in this case. So you didn't have an affidavit from her, any sworn statement from her? I did not. It was a proffer by, by me as the attorney. And what I'll say, Your Honor, is I've never been appointed to a case that didn't have a hearing. And so I was quite shocked when a hearing wasn't given in this case. And obviously Ms. Jones is not a friendly witness in this case, right? I've, we're alleging that she's ineffective and she was truthful and admitted some of her ineffectiveness, but I can't say that she was really, would have been really excited if I showed up with an affidavit and a notary. Well, I guess my concern is this, because you've got to show, even if I accept that she was ineffective, and for me, if I get, if someone gets indicted 20 years after the offense, then statute of limitations and prescriptive periods, as they call them in Louisiana, would probably be the first thing I looked at. So, but even if I accept that the performance was deficient, you have to show that, but for the deficient performance, he would never have, he wouldn't have entered this plea. He wouldn't have taken this plea deal. And so he was looking at a murder charge, which would have carried, in other words, if he goes to trial, he gets convicted on a murder charge, what's he get, what could he get for that? It's a mandatory life. So, tell me why he wouldn't have taken this plea? Well, so the plea, on the plea deal he got was essentially a mandatory life, too. He got, you know, 61 years.  But- 21 plus 40, I had 41 plus 40. Right. Anyway, it adds up to 61. Right. He got 61 years. So, what I'll tell you that the record shows is that he has consistently, since the original sentencing hearing, said he wouldn't have pled guilty. So it's not like he, this was a buyer's remorse deal down the road, and now he just hopes y'all believe that he would have not pled guilty. From the first instance he was told what was happening, he spoke up in court over his lawyer and said that he wouldn't have pled guilty. That's not what he was told, right? He wanted to withdraw his guilty plea. I think, I mean, usually I don't even have that good of facts to talk to the court about that shows that contemporaneously the client would not have pled guilty. I'll also point, Your Honor, to the Second Circuit case in Hansel, where the Second Circuit says that not only is it deficient performance to plead someone to a prescribed charge, but the court should assume prejudice and should assume that, like, no rational defendant would plead to a prescribed charge. And in this case, it would be one thing if Mr. Levine got a great deal, right? Then I think the prejudice argument would be hard to make, right? If he got a good deal when he was looking at a mandatory life. But he did not get a good deal. He got a life sentence when the worst that could have happened if he went to trial was he'd have gotten a life sentence. And I want to point out that this is not some overwhelmingly strong case by the state. This is a case based solely on a DNA hit, right? And DNA can be powerful evidence, but there's no confession, there's no eyewitness, there's no other evidence. This was a DNA hit, and DNA degrades over time. There could have been defenses that were raised. Ms. Jones in the proffer I represented, that he was reluctant to even take that deal, right? The deal that would set him free pretty soon after that, but that she had to convince him by assuring him that Judge LeBlanc had promised to give him this deal. And so all of that in the record, I think, shows that he would not have accepted this deal. And I also think, like, without him even saying it, who would accept a life sentence if the worst that could happen after trial is a life sentence, right? And I think that that's a very, I think that's enough to show prejudice, right? He just has to show under LeFleur v. Cooper that if he would have been given correct advice, he would have made a different decision, right? He doesn't, you know, we don't have to show that he would have won the trial. Your time has expired. I've been a little generous. Oh, thank you, Judge. I appreciate that. All right. Is that Mr. Candell? Yes, sir. All right. I got that right. I messed up. Levine, but. Levine. Yeah. Good morning, Your Honors. My name is Donald Candell. I'm an assistant district attorney for the parishes of Ascension Assumption in St. James, State of Louisiana. COA was granted in this particular case based upon the court's resolution that in fact reasonable jurists could disagree as to whether or not the district court erred in granting or in And basically what the court said was that he had failed to advise him the kidnapping charge was time barred and that by pleading guilty, he was waiving that time bar. Now it also, the court also requested that we address the statute of limitations, Louisiana statute of limitations and their pertinence to the case here. As framed by the court, there are really three questions. One, was in fact crime secondary kidnapping prescribed? Two, was he not informed of that fact? And three, did they not inform him of whether or not when he pled, he was giving up that right of self-defense prescription? The facts in this case, as stated by counsel, this is a cold case that happened in 1990, December of 1990, in which Ms. Levine was kidnapped, raped and killed, murdered by her nephew who lived in the same neighborhood. Two weeks or two days after the event, her body was found brutally stabbed, her throat slit, raped in a nude in a nearby forest by some hunters. This left her 11-year-old son an orphan in that his brother and his father had previously passed from unrelated accidents. Based on newly discovered DNA testing, they were able to take the DNA from Ms. Levine's clothing and attached it to a defendant. He was subsequently arrested for aggravated kidnapping, I'm sorry, aggravated rape and first-degree murder, subsequently indicted for second-degree murder. On appeal, of course, questions of fact are reviewed for clear error and it must be disputed by clear and convincing evidence. Questions of law de novo, but we're bound by what's in the state court record. Now, the district court found, and I would agree, there are some holes in the record in front of the court, but the real question before us today is whether or not the district court erred in denying the writ based on ineffective assistance of counsel. As the court noted, two issues, prejudice, was he prejudiced? No. You asked, Your Honor, when all of this went down. He was scheduled to go to trial in April of 16, 2016. In January, he pled very close to trial. We were ready to go. What was his sentence if he was convicted? Life without parole. What did he plead to? I'll take manslaughter and second-degree kidnapping. 21 was 21 years without benefit on the manslaughter. The PSI was to determine whether or not what he would get there, but there was a range of 21 to 40, could run either consecutive or concurrent, and that's what the trial court explained to him over and over and over. And then questioned him and said, listen, do you understand what you're pleading to? Have your trial counsels explained all the consequences of your plea? Yes, they have. Did they answer all your questions? Yes, they did. Do you have any further questions? No. That's a record. That's during the boycott. Did the prosecutor make a recommendation about what the sentence should be? No. It was all PSI. And as to the prejudice, there's certainly no prejudice. It was either take the deal, both charges, or don't. He chose to take it. He rolled the dice. Why? Because he did not want to see a life sentence. Now, it turned out that way, and certainly that's, I mean, that is a fact. But it was based on the facts of the case. The severity of the crime, that he got the 40 consecutive rather than 21 concurrent, which he thought he was going to get. But the record is devoid of anything that either the state or the trial court promised him he would get. Nothing. And certainly at the sentencing for second-degree kidnapping, when the court said, this is what you're going to get, and he said, I want to withdraw, because he knew prior to that time that he was not getting a 21 concurrent, trial counsel could have said, Judge, that's not what you said. Did they say that? No. Why? Because it never was promised. He knew very well what was going down, and he certainly wasn't prejudiced, because he knew he was looking at life, possibility, I'll roll the dice. Problem is, it came up craps. No prejudice. And under Strickland, if you don't meet both burdens, prejudice and deficiency, it's not there. You lose. As to the deficiency, the three issues that I talked about with respect to 576, and that's basically the real issue. In our brief, and as cited by Magistrate Bourgeois, went through the timeline of whether or not the crime was timely filed. Now, counsel has admitted in brief that, in fact, the manslaughter charge was timely. So the question comes down to is, is second-degree kidnapping subsumed in the crime of second-degree murder? Now, as counsel cited, and I agree, second-degree kidnapping at the time that the crime was committed, 1990, was not there. But the facts, the statutory definition of kidnapping, whether it's aggravated or whether it's second-degree, are the same. Removing someone from their place of wherever they are for some other purpose or to cause great bodily harm. And that's exactly what happened here. The court in Murray, State v. Murray and State v. Gray, the district court looked at all of those facts, looked at those two particular cases, and found, as a matter of fact, that the evidence in this particular case, the facts of these cases, were very, very similar to those two cases. And the court found that they were under the same facts. So the State would assert, one, that the crime had not prescribed. Secondly, was he told, was he informed that he had the statute of limitations defense? If, in fact, counsel believed that he was, it was not prescribed, why would they notify him of the statute of limitations? For the file of any kind of motion to quash based on something you know you're not going to win is called futile. You don't need to do it. It's not deficient performance, just not. Tell me again why it wasn't deficient performance, because he, because. If counsel believed that, in fact, it had not prescribed, then to have informed him of, you have this defense, why would you do that? You wouldn't, because it's not there. Only in the issue of, it was prescribed, would you notify defense counsel, I mean, notify the defendant that, in fact, that defense was available. Problem is, in the Boykin, they asked, have you been advised of all of the consequences? Yes, I have. So counsel evidently did not tell him. Why? Because they knew doggone well that it was not prescribed. And to have told him something that wasn't true would have been deficient performance. Does that answer your question, Your Honor? No, but, well, let's try this one. He got 40 years on the kidnapping charge. Correct, consecutive. So let's assume the kidnapping charge was prescribed. Was? Okay. Then how would it make sense for him to take the deal anyway? And, because the argument has to be, I wouldn't have taken the deal for him if I had known the kidnapping charge was prescribed. Prescribed. Now, are you taking the position that even if it is prescribed, he still wouldn't have taken the deal? No, because I'm going to tell you why. In the, when he went to sentencing, he didn't complain about, well, I don't want to plead guilty to the kidnapping charge. The only complaint he had was, I thought I was going to get 21 concurrent. Now, where he learned that, I have no idea. Record does not show that, one way or the other. Other than the court said, you were never promised anything. The trial court said that. You were never promised anything. The state never promised him anything. It's not on the record. So where did he get it? I don't know. When they asked, you asked about, is there any affidavit, counsel saying, yeah, you were going to get this, nothing. And any allegation or statement made in a brief, as the court knows, that's not a, that's not a part of the record. That's not state court record and shouldn't be considered. So if we find that the kidnapping charge was prescribed, barred, then he wins? No, because he still rolled the dice. He waived it, as we all know. You can waive a non-jurisdictional error, okay? He waived that. But when you talk about ineffective assistance of counsel, that's still possibility, that you can complain about it. But you have to go back to the boycott, because that's where it's all at. Were you told of all the consequences? Yes. Now, was that specifically stated, prescription, whatever other defense you might have? No, it wasn't in the boycott. But it's their burden to show that, in fact, by clear and convincing evidence, that the fact I've been told everything was not true. Does that answer your question? He'd go. I mean, if you have more argument. You've addressed my question. Other than, did he voluntarily waive it, your honor? I think he did, and the boycott basically says that. Have you been told everything? Yes. Does that include the possibility, if in fact it had prescribed, that you're waiving any kind of statute of limitation defense? Yes, because at that point, when he, during the boycott, he didn't know whether or not he was going to get 21, 40, whatever. He decided to roll the dice, and now doesn't like it. But the state would assert, one, that it's prescribed, that it's not prescribed. Two, he was informed, and because they haven't proved that he was not. And three, factually, he waived it. I have any other questions, your honor? Thank you, counselor. Thank you, your honor. I have a question. Are those alligators on your tie? Yes, ma'am. It is. I have just a couple brief points to address, your honors. In the Boykin colloquy that happens at the guilty plea, in the Boykin form signed by Mr. Levine, there's no mention of prescription. There's no knowing involuntary waiver of a statute of limitations defense anywhere on the record by Mr. Levine. And of course, he asserts, and his lawyer says, they never talked about statute of limitations. Judge, I'd hope you and I would think of that in a cold case prosecution, but there's no evidence in the record that that came up. The second thing I want to talk about is the state says that there's no evidence in the record that he was promised a 21-year deal, and that's not true. It's in the record at page 554. This is Judge LeBlanc at the sentencing. She says, it could have been for 21 years, which I think is what the agreement was. That's the words of the state court judge, acknowledging that there was a 21-year agreement, right? Acknowledging that that's what was discussed before the plea. So I think the record does have evidence that shows that there was this 21-year deal. Shortly after that statement, the client speaks up in court and says, that's not what I was told when she says she's going to give him 40 years. So I think the record shows that there was this 21-year promise made to Mr. Levine. But the last thing I want to talk about is prejudice, which is, and I want to go back to Judge Graves, your question about whether there was an affidavit. Let's go back to the 21-year promise. The plea deals aren't done, this was in state court. That's correct. They don't do the plea deals in writing? They do, it's called a Boykin form, it's not called a plea agreement. And in the Boykin form, it says he's going to get 21 years on the manslaughter, and that the judge is going to determine the sentence on the second degree kidnapping. So it's an open plea to the second degree kidnapping. There is no promise in the. That's what, on an open plea, you can't promise what the judge is going to do. Right, except in this case, the judge did promise the defense lawyer that the judge would give him the 21 years if he would take the deal. And that's what the lawyer represented to Mr. Levine. That's what the judge confirms in her statement at the sentencing. Gave him the 21. On manslaughter, but not the 21 concurrent on the second degree kidnapping, which is what Mr. Levine was told the deal was by his lawyer. And what I think the judge is confirming, I mean the judge is saying she's changed her mind, essentially. And has given him a stiffer sentence than, quote, what the agreement was. And so I think the record supports that. But also, the defense lawyer is saying this, right? That's what my proffer was below. And I know, Your Honor, you asked about an affidavit. I can't force someone to give me an affidavit if they don't want to sign it. But I can subpoena them and force them to testify at a hearing. Which is why I asked for a hearing in this case. And specifically told the magistrate judge in this case, here's what the person would testify, I see I'm out of time. Thank you. Court will take this matter under advisement and we are adjourned.